UNIVERSIDAD DE CIENCIAS MÉDICAS SAN JUAN BAUTISTA, INC., demandante y recurrida *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO y OTROS, demandados y peticionarios.

*Número:* CC-96-279        *Resuelto:* 21 de agosto de 1996

*Edda Serrano Blasini, Subprocuradora General,* y *Manuel Fernández Mejías,* abogado del Departamento de Salud y de la Administración de Facilidades y Servicios de la Salud de Puerto Rico; *René Arrillaga Beléndez* y *Lorenzo Vilanova Alfonso,* abogados de la recurrida.

404

— O —

Opinión concurrente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Corrada Del Río en su parte III.

"Parafraseando a José Ortega y Gasset, toda decisión es primero una intención y luego una realización. Con aquélla

midamos ésta. La obra misma nos revela a la par su norma y su pecado."[1]

## I

La *Administración de Seguros de Salud de Puerto Rico* (en adelante A.Se.S.) no fue ni ha sido parte en el pleito que se resolvió mediante una Sentencia por Estipulación y *cuyos términos se concretaron en el contrato que rige entre el Departamento de Salud y la Universidad de Ciencias Médicas San Juan Bautista, Inc. (en adelante San Juan Bautista).* Tal sentencia *y el contrato pusieron fin al proceso judicial en el Tribunal de Primera Instancia,* Sala Superior de *Guayama.* El contrato dispuso que cualquier controversia ulterior entre las partes ·sería sometida a arbitraje y seleccionó, como *único foro competente para intervenir,* al Tribunal de Primera Instancia, Sala Superior de *San Juan.* Independientemente de si concurren los requisitos jurisprudenciales para su concesión, no es válido el interdicto decretado por el foro de Guayama, sobre todo en cuanto a la entrega de las tarjetas de salud médico-indigente. Ésta deja desprovista de su seguro médico a una porción sustancial de nuestra población.

Dicha entrega es un mandato de ley[2] ajeno de la controversia sobre el alcance del *contrato* objeto de arbitraje, según fuera suscrito entre el Departamento de Salud y San Juan Bautista, en torno al momento, proceso de subasta, adjudicación y traspaso a administradores privados de las facilidades médicas públicas en la Región de Caguas.

Se excedió y erró el ilustrado Tribunal de Primera Instancia, Sala Superior de *Guayama* (Hon. Dante A. Rodríguez Sosa, Juez), al paralizar, so pena de desacato, la acti-

---

[1] *Nogueras v. Hernández Colón,* 129 D.P.R. 184, 185 (1991), opinión disidente.

[2] La Administración de Seguros de Salud de Puerto Rico (A.Se.S.) es el único organismo gubernamental en ley encargado de implantar los planes de servicios médico-hospitalarios basados en seguros de salud. 24 L.P.R.A. sec. 7004.

vidad relacionada con la implantación de la Reforma de Salud en esos municipios. *A lo sumo, su decreto debió limitarse exclusivamente a trasladar la cuestión a San Juan.* En consecuencia, incidió también el reputado Tribunal de Circuito de Apelaciones (Honorables Amadeo Murga, Rodríguez Maldonado y Cabán Castro, Jueces) al negarse, en auxilio de su jurisdicción, a dejar sin efecto esa prohibición. Procede expedir el auto solicitado y, según expuesto, dictar sentencia que suspenda temporalmente la referida orden de interdicto.

## II

El arbitraje es una materia de contrato que cuando las partes han provisto que un tipo particular de disputa debería ser arreglada en arbitraje, en lugar de en litigación, un tribunal no vulnerará dicho acuerdo decidiendo por sí mismo dicha disputa. Véanse: *World Films, Inc. v. Paramount Pict. Corp.*, 125 D.P.R. 352 (1990); *U.C.P.R. v. Triangle Engineering Corp.*, 136 D.P.R. 133, 144 (1994).

Nadie ha cuestionado la validez de las cláusulas de arbitraje y selección del foro de San Juan. Véase *Unisys v. Ramallo Brothers*, 128 D.P.R. 842 (1991). La Sala Superior de *Guayama* carecía de *competencia para intervenir y emitir el interdicto. Al hacerlo, actuó en contra de los términos pactados por las partes, y que el propio tribunal aprobó en su sentencia.* Ésta refrendó, *sin excepciones*, un contrato que incluía una cláusula que establecía un procedimiento de arbitraje para dirimir cualquier reclamación o controversia, incluso la de autos, y confería "competencia exclusiva" a *San Juan. La intervención de la Sala de Guayama* vulneró el principio de política pública que fomenta la solución de disputas por medio de arbitraje. *McGregor-Doniger v. Tribunal Superior*, 98 D.P.R. 864 (1970); *World Films, Inc. v. Paramount Pict. Corps.*, supra.

Esa intervención —para ordenar la paralización de la

Reforma de Salud en el área de Caguas— *menoscabó* los acuerdos entre las partes. No cabe sostener lo contrario a base de la conveniencia de ese foro. *Éste se privó, a sí mismo, al aprobar no intervenir más en el asunto.* La Ley de la Judicatura de Puerto Rico de 1994 en nada afecta dicha estipulación.

## III

Aparte de lo expuesto, existe otro fundamento de peso para suspender el interdicto.

A.Se.S. es una corporación pública con personalidad jurídica propia, *independiente y separada de cualquier otro departamento del Gobierno.* 24 L.P.R.A. sec. 7003. Como tal, está regida por una Junta de Directores compuesta de siete (7) miembros, uno (1) de los cuales es el Secretario del Departamento de Salud. Su encomienda primaria es establecer, administrar y negociar con las aseguradoras un sistema de seguro de salud para la población indigente del país. 24 L.P.R.A. sec. 7004.

A.Se.S. *nunca fue incluida como parte en el pleito original. Tampoco suscribió la estipulación ni el contrato entre el Departamento de Salud y San Juan Bautista, eje de la controversia arbitral.* Aún así, la Sala Superior de Guayama, le prohibió —vía la Secretaria de Salud—[3] realizar cualquier gestión relacionada con la contratación y disponibilidad del seguro de salud para la población de la Región de Caguas. No puede seriamente cuestionarse la gravedad de la situación y el efecto significativo adverso, como parte indispensable ausente en el litigio.

El prestigio, la validez y la fuerza moral intrínsecos de una decisión judicial no sólo dependen de sus razonamien-

---

[3] *Quaere* la facultad legal individual que tiene la Secretaria de Salud para obligar a A.Se.S., sin la correspondiente autorización corporativa mayoritaria, a detener la implantación de la Reforma de Salud.

tos, sino de darle una oportunidad de enfrentarla por quien viene obligada a acatarla (*audi alteram partem*).

— O —

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

Los peticionarios del epígrafe —a saber: Estado Libre Asociado de Puerto Rico; el Departamento de Salud, su Secretaria, Hon. Carmen Feliciano, sus funcionarios, oficiales, agentes, contratistas o empleados; y la Administración de Facilidades y Servicios de Salud de Puerto Rico— mediante el recurso radicado cuestionan, en esencia, la procedencia jurídica de una orden, emitida el 30 de julio de 1996 por la Sala Superior de Guayama del Tribunal de Primera Instancia, mediante la cual dicho foro judicial le ordenó a éstos a

> ... *abstenerse, so pena de desacato de continuar cualquier actividad o procedimiento relacionado con la Implantación de la Reforma de Salud en el área de Caguas*, a saber, Aibonito, Cayey, Cidra, Aguas Buenas, Gurabo, Juncos, Las Piedras, Naguabo, Yabucoa, San Lorenzo, Humacao y Caguas, *tanto en su fase de privatización de facilidades de salud como en la contratación de planes de Seguros de Salud por entes privados*. (Énfasis suplido.) Petición de *certiorari*, Anejo II, pág. 382.

Dicha orden, de carácter interdictal, fue objeto de un recurso de *certiorari*, y una moción en auxilio de jurisdicción, ante el Tribunal de Circuito de Apelaciones. Dicho foro apelativo, mediante Resolución de 5 de agosto de 1996, denegó la moción en auxilio, señalando vista oral para el 27 de agosto del año en curso con el propósito de "considerar todas las cuestiones planteadas en el recurso". Consecuencia inescapable de dicha actuación judicial lo es que la "orden", emitida por el tribunal de instancia el pasado 30 de julio, permanece en pleno vigor.

Procede la revocación de la referida "orden"; veamos por qué.

## I

Con motivo de una demanda que la recurrida, Universidad de Ciencias Médicas San Juan Bautista, Inc., radicara el 23 de septiembre de 1994 contra los peticionarios del epígrafe[1] —y luego de que el foro de instancia, inclusive, hubiera dictado sentencia en el caso, ordenándole a los demandados que le dieran cumplimiento específico a un contrato otorgado entre las partes el 1ro de septiembre de 1992— éstas sometieron ante el tribunal de instancia una "estipulación, o contrato, por transacción" con el propósito de ponerle fin al pleito, la cual fue aprobada por dicho foro judicial mediante sentencia a esos efectos de 5 de junio de 1995. Alegando que los peticionarios del epígrafe habían incumplido con dicho contrato o estipulación, la Universidad solicitó la intervención del tribunal de instancia con el propósito de que dicho foro obligara a los peticionarios a cumplir con la sentencia dictada; solicitud que desembocó en la emisión por el foro de instancia de la "orden" hoy impugnada.

En lo pertinente, dicho "contrato por transacción" confería o autorizaba a la recurrida Universidad de Ciencias Médicas San Juan Bautista, Inc., a utilizar, como "taller clínico" para sus estudiantes, al Hospital Regional de Caguas, siendo responsable la referida Universidad por la facultad médica del mismo, la cual, junto a los estudiantes de medicina, prestarían los servicios médicos en todos —excepto uno— los departamentos del referido Hospital. Ello no obstante, el Departamento de Salud mantenía el

---

[1] En la demanda originalmente radicada por la parte recurrida —*sobre incumplimiento de contrato, "injunction" daños y perjuicios e impugnación de proceso administrativo*— se incluyó como parte demandada, en adición a los aquí peticionarios, al Hospital Santa Rosa, Inc.

control sobre la operación propiamente de la referida institución hospitalaria.

El referido "contrato por transacción", el cual tiene un período de duración de cinco (5) años, contiene una cláusula sobre arbitraje compulsorio. A esos efectos, la cláusula trigésima novena establece:

(a) *Toda y cualquier reclamación, disputa o controversia relacionada con la interpretación o implementación de este Contrato, o con respecto al cumplimiento de las obligaciones que surgen del mismo, será sometida para su resolución a un procedimiento de arbitraje en San Juan, Puerto Rico, de conformidad con las disposiciones de esta cláusula TRIGESIMA NOVENA.* La parte interesada en promover el proceso de arbitraje notificará a la otra parte, por escrito, su intención de entablar dicho procedimiento. Conjuntamente con la notificación, dicha parte promovente notificará su selección de una tercera persona como árbitro. Dentro de los diez (10) días siguientes al recibo de la referida notificación, la parte promovida deberá designar la persona que seleccione como árbitro, y notificará de tal selección a la promovente por escrito. Los dos (2) árbitros nombrados de conformidad con lo anterior nombrarán a un tercer árbitro, que no podrá tener interés alguno en el asunto. Dicho nombramiento se llevará a cabo dentro de los quince (15) días siguientes a la fecha del nombramiento del árbitro de la parte promovida. *Una vez seleccionado el conjunto de árbitros (en adelante "los Arbitros") éstos procederán, a la consideración y resolución final de la controversia.*

(b) *La decisión de la mayoría (2/3) de los árbitros respecto a la controversia adjudicará de manera final dicho asunto y tendrá efecto vinculante entre las partes contratantes.* En caso de que cualquiera de las partes con derecho a nombrar un árbitro de conformidad con las disposiciones de esta cláusula se negase o fallase en así hacerlo (o cuando los dos (2) árbitros originalmente nombrados asimismo se negasen o fallasen en nombrar al referido tercer (3er) árbitro) *la parte afectada, o ambas partes según sea el caso, podrá(n) solicitar el nombramiento judicial del árbitro o árbitros restantes.*

(c) Cualquier procedimiento de arbitraje entablado de conformidad con esta cláusula, *se llevará a cabo en la ciudad de San Juan, Puerto Rico, y estará sujeto a los reglamentos del "American Arbitration Association"*, según estén en vigor en dicho momento. *La decisión de los árbitros se emitirá conforme a derecho con referencia específica a las disposiciones aplicables de las leyes de Puerto Rico y a sus interpretaciones jurispruden-*

*ciales, todo lo cual será la ley aplicable a cualquier procedimiento entablado de conformidad con esta cláusula.* Los Arbitros emitirán su decisión con la debida diligencia y sin demora innecesaria.

(d) Las costas y gastos relacionados con el procedimiento de arbitraje serán compartidos igualmente por el Departamento y la Escuela. Cada parte correrá con los costos y gastos relacionados a sus respectivos honorarios, desembolsos y el descubrimiento y presentación de su prueba. La Escuela y el Departamento se comprometen a suscribir los documentos y a desempeñar los actos que sean necesario[s] y/o convenientes para someter el asunto en controversia al procedimiento de arbitraje que aquí se establece. *Los Arbitros resolverán el asunto de acuerdo a derecho, pero las disposiciones de esta cláusula no se entenderán como autorización expresa o implícita para variar o modificar las demás disposiciones de este Contrato y, por el contrario, se entenderán como una limitación a su jurisdicción.*

*Las partes designan la Sala de San Juan del Tribunal Superior como aquella con competencia exclusiva para atender cualquier reclamo relacionado con el procedimiento de arbitraje aquí pactado.* (Énfasis suplido.) Petición de *certiorari*, ante, pág. 148.

La controversia entre las partes surge básicamente como consecuencia de la acción del Departamento de Salud de Puerto Rico, en unión a la corporación pública conocida como la Administración de Seguros de Salud de Puerto Rico (A.Se.S.) de comenzar a establecer o implantar, en la "región de Caguas", la llamada "tarjeta de salud". Alega la Universidad que el Estado está impedido de así hacerlo como consecuencia de lo acordado en el "contrato por transacción" que firmaron las partes. El Estado, por el contrario, sostiene que nada de lo estipulado o acordado en dicho contrato le impide establecer en el área de Caguas, en estos momentos, un seguro médico para la población médico-indigente.

La solución a dicha controversia o interrogante depende, de manera principal, de la interpretación que en su día se haga de las disposiciones de la cláusula trigésima

cuarta (34) del mencionado "contrato por transacción". La misma, *en lo pertinente*, establece:

... El término original de este Contrato será de cinco (5) años (el "Término"), iniciándose 1 de julio de 1995 y concluyendo el 30 de junio del 2000.

*Previo al comienzo del tercer año de vigencia de este Contrato, en enero de 1997, a opción del Departamento, los términos y condiciones económicos aquí expuestos podrán ser variados entre las partes en virtud de lo cual la Escuela podrá continuar operando el Hospital.* En este respecto, *e independientemente del hecho que se haya implantado la Reforma de Salud en el área de Caguas,* el Departamento podrá, a su opción, establecer un esquema de pago por los servicios médicos prestados en el Hospital durante dicho año, que sea análogo al esquema de pago utilizado en aquellas facilidades de salud que en ese momento sean objeto de la referida Reforma de Salud. Dicho esquema, de ser implantado, proveerá a la Escuela, como mínimo, con fondos suficientes para cubrir el presupuesto operacional del Hospital y el presupuesto de enseñanza.

*El Departamento podrá, a su opción, dar comienzo al proceso de implantación de la Reforma de Salud en el área de Caguas, en cualquier fecha posterior a diciembre de 1997, para el cual la Escuela tendrá la alternativa de someter una propuesta para la operación del Hospital* (y otras facilidades de estar incluidas), *a fin de competir con los demás licitadores en el procedimiento de solicitud de propuestas para la adjudicación y la correspondiente privatización de dicho Hospital.* Con respecto al referido proceso de adjudicación la Escuela competirá bajo los mismos términos y condiciones aplicables al resto de los proponentes, sin trato preferencial de clase alguna, *salvo que en virtud de la política pública de fomentar la educación médica,* la Escuela recibirá una bonificación de diez (10) puntos sobre la puntuación que recibiese la propuesta sometida por la Escuela luego de ser evaluada por el Departamento. *Dicha preferencia será divulgada en la Solicitud de Propuesta ("SDP") que sea preparada para el arrendamiento, operación y transferencia del Hospital.* De no ser seleccionada, la Escuela retendrá el pago de la Sección (c) de la Cláusula Trigésima Tercera por el período restante del Contrato, salvo que el mismo se reducirá al ocho por ciento (8%). Dicha SDP también dispondrá que la Escuela mantendrá su taller clínico en el Hospital durante el término restante de este Contrato, de no haber sido acreditada por el LCME; de haber sido acreditada para esa fecha, la Escuela mantendrá su taller clínico libre de costo durante el término del

contrato privatizador. (Énfasis suplido.) Petición de *certiorari*, ante, pág. 146.

## II

El tribunal de instancia —como justificación de su *indebida* intervención en el caso y de su negativa a trasladar el asunto a la Sala Superior de San Juan— expresó que el "resultado más importante de la orientación procesal en la Ley de la Judicatura (1952) fue eliminar las distinciones jurisdiccionales mediante la unificación del Sistema Judicial" (Petición de *certiorari*, ante, pág. 372) y que la Sala Superior de Guayama era el foro "más conveniente y apropiado para resolver las controversias [planteadas], sobre todo cuando se trata de velar po[r q]ue los términos de [su] sentencia sean cumplidas cabalmente". Íd., pág. 373. *Erró* al así resolver.

Por otro lado —y a pesar de que dicho tribunal de instancia *correctamente* resolvió que lo procedente en derecho era remitir el asunto a arbitraje, conforme lo habían expresamente pactado las partes en el contrato por transacción— *erróneamente* entendió procedente emitir "una orden para mantener el status quo de forma y manera que la resolución del arbitraje y la sentencia en este caso dictada el 5 de junio de 1995, no resulte académica" (Petición de *certiorari*, ante, pág. 375); determinación errónea fundada en la no menos *errónea* conclusión de que en el presente caso "se han cumplido con los requisitos exigidos para dictar una orden de esta naturaleza, a saber: a) que el peticionario de la orden presente un caso fuerte de probabilidad de prevalecer en los méritos; b) que demuestre que si no se dicta dicha orden una parte sufrirá daños irreparables; c) que ningún daño sustancial se causará a las demás partes interesadas y (d) que la suspensión de la sentencia no perjudica al interés público. *Peña v. Federación de Esgrima de Puerto Rico*, 108 D.P.R. 147 (1978)". Íd.

Habiéndose negado el Tribunal de Circuito de Apelacio-

nes a dejar sin efecto la referida orden, los peticionarios del epígrafe comparecieron ante este Tribunal, imputándole a dicho foro apelativo haber errado:

1. ... al negarse a dejar sin efecto una orden de carácter interdictal emitida al amparo de la Regla 56.5 de las de Procedimiento Civil vigentes por el Honorable Tribunal de Instancia cuya orden no cumple con los criterios, normas y guías que este Honorable Tribunal Supremo de Puerto Rico ha expresado en relación a la procedencia de una orden de tal naturaleza.

2. ... al negarse a dejar sin efecto una Orden de naturaleza interdictal la cual pretende hacerse extensiva a terceras personas. Petición de *certiorari*, pág. 9.

Mediante Resolución de 14 de agosto de 1996, le concedimos término a la parte recurrida "para que comparezca por escrito a mostrar causa, si la hubiere, por la cual no deba dejarse sin efecto la Resolución del Tribunal de Circuito de Apelaciones y expedirse el recurso de Certiorari".

La parte recurrida, Universidad de Ciencias Médicas San Juan Bautista, Inc., ha comparecido en cumplimiento de la mencionada Resolución. Su comparecencia no resulta convincente; procede, en consecuencia, resolver según lo intimado en la orden de mostrar causa emitida.

### III

De entrada, entendemos procedente señalar que el tribunal de instancia —no obstante haber sido el foro judicial ante quien se sometió, y el que aprobó mediante sentencia a esos efectos, la estipulación o contrato por transacción que suscribieran las partes— debió *abstenerse* de intervenir, en la forma que lo hizo, en el presente caso.

Hemos expresado, y resuelto, tan reciente como hace aproximadamente dos (2) años, que existe un interés, el cual debe ser endosado por el foro judicial, en promover las cláusulas de arbitraje contractuales y una política pública en favor del arbitraje, debiendo resolverse toda duda respecto a la existencia, o no, de dicho procedimiento en favor

del mismo. *U.C.P.R. v. Triangle Engineering Corp.*[2] A esos efectos, *expresamente resolvimos* en el antes citado caso de *Universidad Católica* que, aun cuando la intervención judicial no está vedada, *ante un convenio de arbitraje lo prudencial es la abstención judicial.*

Como surge de la cláusula número 39 del "contrato por transacción" suscrito entre las partes, éstos *expresamente pactaron* que toda "y cualquier reclamación, disputa o controversia relacionada con la interpretación o implementación de este Contrato, *o con respecto al cumplimiento de las obligaciones que surgen del mismo*, será sometida para su resolución a un procedimiento de arbitraje" —(énfasis suplido) Petición de *certiorari*, ante, pág. 148— estableciendo las partes, en relación con lo anterior, un *detallado procedimiento* para la selección del panel de los tres (3) árbitros que será responsable de resolver la reclamación, controversia o disputa surgida entre las partes.

Las partes, de hecho, fueron *tan puntillosas y específicas*, en este respecto, que establecieron, inclusive, un procedimiento en particular para la eventualidad de que una de ellas se negara a cumplir con las obligaciones contraídas en virtud del procedimiento de arbitraje que expresamente pactaron. Como hemos podido notar, de surgir esta situación, "la parte afectada, o ambas partes según sea el caso, podrá(n) solicitar el *nombramiento judicial* del árbitro o árbitros restantes". (Énfasis suplido.) Petición de *certiorari*, ante, pág. 148. Debe señalarse, por último y en cuanto a este aspecto, que las partes expresamente designaron a "la Sala de San Juan del Tribunal Superior como aquella con *competencia exclusiva* para atender *cualquier reclamo* relacionado con el procedimiento de arbitraje aquí pactado". (Énfasis suplido.) Íd., pág. 149.

En vista a todo lo anteriormente expresado, la Sala de Guayama del Tribunal de Primera Instancia de Puerto Rico debió *abstenerse* de intervenir, y resolver, la moción

---

[2] 136 D.P.R. 133 (1994).

solicitando cumplimiento específico del contrato por estipulación radicado por la Universidad de Ciencias Médicas San Juan Bautista, Inc.; debiendo dicho foro haberse *limitado* a referir a las partes al procedimiento de arbitraje expresamente pactado por ellas en dicho contrato y/o, cuando menos, referir el caso a la Sala Superior de San Juan para que fuera ésta la que lidiara, de manera preliminar, con las partes. No lo hizo; erró al así no actuar.

## IV

Como expresáramos anteriormente, la indebida intervención del tribunal de instancia en el presente caso culminó en la emisión de una "orden" mediante la cual, en síntesis, dicho foro le ordenó a los peticionarios del epígrafe a abstenerse, *so pena de desacato*, de continuar adelante con *cualquier actividad o procedimiento* relacionado con la implantación de la reforma de salud en el área de Caguas, *tanto* en su fase de privatización de facilidades de salud *como* en la contratación de seguros de salud por entes privados; ello con el propósito, conforme expresara dicho foro, de mantener el statu quo y hasta que el procedimiento de arbitraje terminara.

El tribunal de instancia *no* hizo constar la base legal de su facultad para expedir la referida orden; esto es, no especificó al amparo de qué disposiciones legales expidió dicha orden. Los peticionarios del epígrafe sostienen, en el recurso que radicaran ante este Tribunal, que el foro de instancia actuó bajo las disposiciones de la Regla 56.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Resulta difícil, en realidad, poder precisar la base legal utilizada. *Por un lado*, no creemos que se pueda aseverar, con certeza, que la misma lo es la Regla 56 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Como sabemos, cualquier orden provisional expedida a base de dicha disposición reglamentaria tiene el propósito de "asegurar la efectividad

de la sentencia" (íd.) mediante la expedición de órdenes de embargo, prohibición de enajenar, etc. Ciertamente, esa *no* parece ser la situación en el presente caso. *Por otro lado*, la orden en controversia *no* cumple con los requisitos de un *injunction* provisional o preliminar. *Concluimos* que nos enfrentamos a una orden, *sui generis*, que goza de la naturaleza de un *injunction* permanente.

De cualquier forma, no hay duda de que a la referida orden le son aplicables los criterios establecidos por nuestra jurisprudencia respecto a esta clase de situación, a saber: (1) la naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el *injunction*, (2) su irreparabilidad o la existencia de un remedio adecuado en ley, (3) la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo, (4) la probabilidad de que la causa se torne en académica de no concederse el *injunction*, y (5) sobre todo, el posible impacto sobre el interés público que se solicita. Véanse: *P.R. Telephone Co. v. Tribunal Superior*, 103 D.P.R. 200, 202 (1975); *Cobos Liccia v. DeJean Packing Co., Inc.* 124 D.P.R. 896, 902 (1989).

Somos de la opinión que la orden *sui generis* emitida en el presente caso infringe, cuando menos, *dos* (2) de los criterios antes señalados. A nuestro juicio, *y sin que lo estemos adjudicando o resolviendo*, la probabilidad de prevalecer de la parte recurrida en el procedimiento de arbitraje a celebrarse es, cuando menos, dudosa. Siendo ello así, cobra *singular* importancia un segundo criterio, esto es, el relativo al impacto que tiene la orden en controversia sobre el interés público en general. *Nos explicamos.*

La llamada "reforma de salud" se compone, de manera principal, de dos (2) fases u operaciones distintas, a saber: (1) la "privatización" de hospitales o facilidades de salud públicas, la cual operación la lleva a cabo el Departamento de Salud de Puerto Rico en unión a la Administración de Facilidades y Servicios de Salud de Puerto Rico (A.FA.S.S.);

y (2) la implantación de un seguro médico, o "tarjeta de salud", para la población médico-indigente que le permite a éstos acudir a proveedores de servicios médicos contratados por la compañía que emite dicho seguro médico, operación que es llevada a cabo por una corporación pública, creada con esos propósitos, conocida como la Administración de Seguros de Salud (A.Se.S.).

Una lectura del "contrato por transacción" que acordaron las partes revela que en el mismo se utiliza el término "reforma de salud" para referirse tanto a la fase u operación de privatización de hospitales públicos como al plan de implantación del seguro médico. Ello, no hay duda, causa cierta confusión en la interpretación del referido contrato. Ahora bien, establece nuestro Código Civil que las "cláusulas de los contratos deberán interpretarse las unas [con] las otras, atribuyendo a las dudosas el sentido que resulta del conjunto de todas".(3) *A nuestro juicio, nada de lo plasmado en el contrato por transacción acordado por las partes —leídas las cláusulas del mismo de manera conjunta o individualmente— parece sostener la posición de la parte recurrida, aparentemente acogida por el tribunal de instancia, a los efectos de que el Estado se comprometió mediante dicho contrato a no implementar en el área de Caguas un seguro médico para la población médico-indigente.*

En específico, una lectura de los términos en que está redactada la cláusula 34 —*cual es la que señala la parte recurrida en apoyo a su posición*— lo que parece indicar es que el Estado se comprometió a *no privatizar* el Hospital Regional de Caguas, y "otras facilidades de estar incluidas", hasta una "fecha posterior a diciembre de 1997", esto es, enero de 1998; en cuya situación, la Universidad recurrida podrá participar en el proceso de licitación que se lleve a efecto "bajo los mismos términos y condiciones aplicables al resto de los proponentes, sin trato preferencial de clase alguna, salvo que en virtud de la política pública de

---

(3) Véase *Caballero v. Kogan*, 73 D.P.R. 666 (1952).

fomentar la educación médica, la Escuela [Universidad] recibirá una bonificación de diez (10) puntos sobre la puntuación que recibiese la Escuela luego de ser evaluada por el Departamento". Petición de *certiorari*, ante, pág. 146. Nada, *repetimos*, en dicho contrato parece indicar que el Estado asumió la obligación de no implantar la llamada "tarjeta de salud" en el área de Caguas hasta enero de 1998, como sostiene la parte recurrida.

En consecuencia, repetimos, la probabilidad que tiene la Universidad recurrida de prevalecer ante el panel de arbitraje —*panel de árbitros a quien le corresponde resolver, en primera instancia, esta controversia*— no parece ser una muy alta. Siendo ello así, resulta verdaderamente difícil, sino imposible, sostener la vigencia de la orden emitida por el tribunal de instancia en el presente caso. Si a lo anteriormente expresado le añadimos el impacto en el "interés público" que tiene la orden en controversia, *en específico, el perjuicio, o daño, que dicha orden causa en la población médico-indigente del área de Caguas*, población que mientras se mantenga en vigor dicha orden carecerá de los beneficios que el mencionado seguro médico les concede, *la conclusión no puede ser otra que no sea la de que procede dejar sin efecto la orden emitida en el presente caso por el tribunal de instancia.*

En fin, la "orden" emitida por el tribunal de instancia, y sostenida por el Tribunal de Circuito de Apelaciones, *resulta ser no sólo improcedente en derecho sino que particularmente dañina con el sector de nuestra ciudadanía que mayor ayuda y protección necesita; razón por la cual la misma no puede prevalecer. El "interés público" envuelto así lo hace imperativo.*

Como certeramente expresara este Tribunal hace más de veinticinco (25) años, en *A.P.P.R. v. Tribunal Superior*, 103 D.P.R. 903, 907 (1975):

> *Nadie tiene derecho, en una sociedad democrática, a promover sus particulares intereses a costa de un mayor sector del*

*pueblo, imponiendo a éste un tributo de sufrimiento, privación, y desvalimiento, no importa la justicia real o nominal de la reclamación.* Ya antes dijimos que "al considerar la expedición del auto [de *injunction*] el tribunal debe ponderar la naturaleza de los derechos individuales afectados frente al valor y utilidad social de la obra pública en cuestión." *Ortega Cabrera v. Tribunal Superior*, 101 D.P.R. 612, 618 (1973). (Énfasis suplido.)

## V

Lo anteriormente expuesto hace *totalmente innecesario* que discutamos, en detalle, *dos* (2) fundamentos adicionales para rescindir la orden impugnada. Plantean los peticionarios, con razón, que dicha orden afecta los derechos de una corporación pública, la Administración de Seguros de Salud de Puerto Rico (A.Se.S.), *la cual no es parte en el pleito.*

*No* hay duda alguna sobre el hecho de que la "A.Se.S." es en efecto una corporación pública que tiene "existencia perpetua con personalidad jurídica independientemente y separada de cualquier otra entidad, agencia, departamento o instrumentalidad del Gobierno de Puerto Rico ...". 24 L.P.R.A. sec. 7003. Tampoco hay duda alguna de que esta corporación pública es la instrumentalidad del Gobierno de Puerto Rico que está encargada de poner en vigor el seguro médico para la población médico-indigente de nuestro País; razón por la cual resulta obvio que la orden emitida por el foro de instancia le afecta. Por último, la "A.Se.S." *nunca* ha sido parte en el pleito.

Ello, de ordinario, sería suficiente para concluir que el caso del epígrafe adolece del defecto de parte indispensable. *Ahora bien*, la "A.Se.S." es dirigida por una Junta de Directores de siete (7) miembros, a saber: los Secretarios de los Departamentos de Salud y de Hacienda; el Comisionado de Seguros; y los restantes cuatro (4) miembros, nombrados por el Gobernador con el consentimiento del Senado de Puerto Rico, serán dos (2) "representantes del interés público" y dos (2) serán "profesionales compe-

tentes de la industria del seguro y de los campos de la salud o de la Administración de Servicios de Salud", nombrando el Gobernador el presidente de dicha Junta.

Sabido es que, de ordinario, una orden de *injunction* es válida siempre que la persona o institución contra quien se expide la misma sea parte en el pleito. Se ha sostenido, sin embargo, que el *injunction* puede obligar a una persona o institución, que *no* es parte propiamente en el pleito, si éstas están en "solidaridad jurídica" con la parte contra quien se dirige la orden *o* si éstas actúan de acuerdo o participan activamente, con la parte contra quien se dirigió la orden *siempre* que reciba "aviso" de dicha orden. Véanse: Regla 57.4 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III); Reglas 65(d) y 65.1 de Procedimiento Civil federal, 28 U.S.C.; *Baltz v. The Fair*, 178 F. Supp. 691, 692 (N.D. Ill. 1959); D. Rivé Rivera, *Recursos Extraordinarios*, Atlanta, Darby Printing Co., 1989, págs. 39–40.

Ello plantea la interrogante de si, aun cuando "A.Se.S." no es parte en el pleito, la orden emitida es válida contra dicha corporación pública por la misma estar en "solidaridad jurídica" con, o por actuar activamente con, el Departamento de Salud y su Secretaria en la implantación de la llamada "Reforma de Salud", quienes sí son partes en el pleito. Como expresáramos anteriormente, dicha interrogante *no* tenemos que resolverla; ello por razón de que procede la revocación de la orden emitida por los fundamentos expuestos en las partes III y IV de la presente ponencia.

## VI

Por otro lado, y si se resolviera en definitiva que el pleito no adolece del defecto de parte indispensable —defecto que sería suficiente, sin nada más, para rescindir la orden impugnada— tenemos que la orden en controversia podría infringir las disposiciones del Art. 6783 del Código

de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3524, el cual expresamente *prohíbe* la expedición de un *injunction*:

3. Para impedir la aplicación u observancia de cualquier ley de la Asamblea Legislativa de Puerto Rico, o el cumplimiento de cualquier actuación autorizada por ley de la Asamblea Legislativa de Puerto Rico, de un funcionario público, de una corporación pública, o de una agencia pública, o de cualquier empleado o funcionario de dicha corporación o agencia, a menos que se hubiera determinado por sentencia final, firme, inapelable e irrevisable que dicha ley o actuación autorizada por ley es inconstitucional o inválida.

Cualquier *injunction* preliminar, permanente, o con carácter de entredicho, incluso cualquier orden para hacer efectiva la jurisdicción de un tribunal o para asegurar la efectividad de una sentencia, que se haya expedido en las circunstancias expuestas en este inciso 3 y que esté en vigor a la fecha de vigencia de esta ley o que en lo sucesivo se expidiere, será nulo e inefectivo.

Disponiéndose, sin embargo, que el tribunal podrá dictar dicha orden de entredicho provisional, *injunction* preliminar o permanente sujeto a los términos de la Regla 57 de Procedimiento Civil:

(1) En aquellos casos en que ello sea indispensable para hacer efectiva su jurisdicción y previa una determinación de que la orden es indispensable para evitar un daño irreparable a la parte peticionaria;

(2) cuando en la petición se alegue que alguna persona, bajo la autoridad de alguna ley, ordenanza, o reglamento del Estado Libre Asociado de Puerto Rico, esté privando o sea el causante de que alguien esté privando al peticionario de algún derecho, privilegio o inmunidad protegido por la Constitución o las leyes del Estado Libre Asociado de Puerto Rico o por la Constitución o leyes de los Estados Unidos de América que sean aplicables a las personas bajo la jurisdicción del Estado Libre Asociado de Puerto Rico.

Disponiéndose, además, que al dictar dicha orden el tribunal debe considerar el interés público envuelto y concluir que la parte peticionaria tiene una posibilidad real de prevalecer en los méritos de su petición. Dicha orden sólo tendrá vigor en el caso específico ante el tribunal y entre las partes.

## VII

En conclusión, y por los fundamentos antes expuestos, procede la expedición del recurso de *certiorari* radicado y la emisión de una Sentencia revocatoria de la resolución emitida por el Tribunal de Circuito de Apelaciones que mantuvo en vigor la orden que emitiera la Sala Superior de Guayama del Tribunal de Primera Instancia en el presente caso; dejándose *sin* efecto el *injunction* sui géneris que emitiera el tribunal de instancia.

*Dicha orden nunca debió ser emitida.* La misma atenta, *de la manera más burda*, contra el bienestar de la población médico-indigente de nuestro País y, por ende, contra el "interés público".

Por los fundamentos antes expuestos es que concurrimos con la Sentencia mayoritaria.