*685 TEXTO COMPLETO DE LA SENTENCIA
Mediante recurso de apelación presentado el 19 de mayo de 2008, comparece ante este tribunal Michael Hayden Leason; Stephanie Leason y la Sociedad Legal de Gananciales por ellos compuesta; y MHL II, Inc. (apelantes).
Nos solicitan que revisemos la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (TPI) el 15 de abril de 2008, archivada en autos el 17 de abril de 2008. Mediante ésta, el TPI declaró Con Lugar la petición de confirmación de laudo solicitada en el caso AAC2007-0159 (601) y su ejecución. Por otro lado, declaró No Ha Lugar la impugnación de laudo y la nulidad de contrato que formularon los apelantes en el caso AAC2007-0167 (601) y en consecuencia desestimó la Demanda Enmendada sobre impugnación de laudo, nulidad de contrato e incumplimiento de contrato, en todas sus partes y reclamaciones.
El TPI condenó a los apelantes a pagar solidariamente $649,250.00, más intereses desde el momento en que se emitió el laudo y a pagar los honorarios de abogado y gastos en que incurrieran Alain Tiphaine; Jessica Tiphaine y la Sociedad Legal de Gananciales compuesta por ambos; Bat Holdings, Inc.; y Bat Resorts, Inc. (BAT) en obtener la inscripción de las escrituras 10, 12, 14, 15 y 16.
Además de lo anterior, el TPI condenó a pagar las costas, gastos y $5,000.00 en concepto de honorarios de abogado y dispuso que la sentencia devengaría intereses por temeridad a razón del 8.50% desde la fecha del laudo.
A continuación exponemos el trasfondo fáctico y procesal del caso.
I
Los casos consolidados ante nos tienen su génesis en un contrato otorgado entre las partes el 15 de abril de 2002, titulado “Exclusive and Non-transferáble Option to Purchase Agreement” y “Definitive Purchase Agreemenf’. Mediante estos documentos, los apelantes pactaron varios acuerdos comerciales, entre los cuales incluía una opción de compra a favor de BAT para la adquisición de una parcela de terreno identificada en el acuerdo como “Development Parcel One". El 20 de julio de 2004, BAT ejerció su derecho de opción a compra sobre el referido predio de terreno y ese día se otorgó la escritura de compraventa. De acuerdo a los términos de la misma, las partes estipularon que la adquisición del terreno era para la construcción de unas unidades residenciales que serían parte del desarrollo de un condo-hotel. En caso de que la construcción pactada no ocurriera dentro de los dos (2) años desde el otorgamiento de la escritura de compraventa, mediante pacto de retroventa, los apelantes podían readquirir la propiedad.
El 21 de julio de 2006, los Apelantes decidieron ejercer su derecho de retroventa, pero BAT se negó a *686 firmar las escrituras según pactado, por lo que los primeros presentaron una demanda ante el TPI.
El 8 de septiembre de 2006, BAT presentó Moción de Desestimación en la que señaló que el “Definitive Purchase Agreement”, contrato que dio base para la escritura de compraventa, establecía que toda contienda relacionada con dicho contrato tenía que ser sometida a arbitraje, por lo que procedía que se desestimara la demanda por falta de jurisdicción.
Dicho Contrato y sus principales cláusulas relativas a la controversia fueron evaluados por el TPI en los casos: 1) A PE2006-0039 de Michael Leason, Stephanie Leason y la Sociedad Legal de Gananciales compuesta por ellos v. Alain Tiphaine, Bat Holdings, Inc. y otros; así mismo y 2) A AC2006-0136 de MHL II, Inc., Michael Leason, Stepahnie Leason y la Sociedad Legal de Gananciales compuesta por ellos v. Bat Honlings, Inc.
En ambos casos, el TPI dictó sentencia concluyendo que las partes debían remitirse al foro de arbitraje por así haberse pactado expresamente en el “Definitive Purchase Agreement” que abarcaba todos los asuntos contenidos en dicho contrato, incluyendo la venta del predio objeto de la cláusula de retroventa.
A la luz de tal evaluación se remitieron las partes al pactado procedimiento de arbitraje. Bat inició el caso número 50-180-T-00111-06 de Bat Holings Inc. y Bat Resorts, Inc. v. Michael Leason, Stephanie Leason y MHL, II, Inc. ante el Centro Internacional de Resolución de Disputas de la Asociación Americana de Arbitraje.
El Centro emitió el laudo el 28 de agosto de 2007, a favor de Bat.
En síntesis, el Laudo resuelve varias controversias, a saber: (i) que no procede la retroventa pactada en el “Definitive Purchase Agreement” a favor de los Leason; (ii) que los Leason tienen el derecho a utilizar el predio identificado en el “Definitive Parchase Agreement” como el “Two Acre Parcel"-, (iii) que no procede la compensación a favor de Bat por los vicios de construcción de cierto edificio conocido como el “helipuertoy (iv) que los Leason, dentro del término de tres (3) meses, vienen obligados a realizar todos los actos necesarios para inscribir las parcelas transferidas a Bat o, de lo contrario, reembolsarían a dicha parte por los gastos y honorarios de abogado incurridos por Bat para obtener dicha inscripción. El laudo también le impone a los Leason el pago de $500,000.00 por concepto de daños; $145,000.00 en honorarios de abogados y el reembolso de $4,250.00 en costas a favor de Bat.
Mediante Sentencia del 20 de diciembre de 2007, caso KLAN-2007-00236, este Tribunal de Apelaciones (TA) confirmó la sentencia dictada en el caso AC2006-0136; acto seguido el 27 de diciembre de 2006, el TPI, mediante Sentencia, concedió vigencia y validez a dicho acuerdo de negociación, mediación y arbitraje.
El 15 de abril de 2008, el TPI en su sentencia, de la cual los apelantes recurren en este recurso, declaró Ha Lugar la petición de confirmación del Laudo solicitada por Bat y declaró su confirmación y ejecución. Por otro lado declaró No Ha Lugar la impugnación del laudo y la solicitud de nulidad del contrato y en consecuencia desestimó la Demanda Enmendada sobre impugnación del laudo, nulidad de contrato e incumplimiento de contrato, en todas sus partes y reclamaciones.
Inconforme con el dictamen del TPI, los Apelantes presentaron el recurso que nos ocupa y señalaron la comisión de los siguientes errores:

“1) Erró el TPI al desestimar la demanda de impugnación del laudo porque alegadamente los apelantes no expusieron ni probaron ninguno de los fundamentos que esboza el Artículo 22 de la Ley de Arbitraje, 31 L.P.R. A. see. 3222, para solicitar la impugnación del laudo.

*687
2) Erró el TPI al concluir que el panel de árbitros no violó el debido proceso de ley de los apelantes, y al concluir que el panel no rehusó escuchar evidencia pertinente y material a la controversia.

3) Erró el TPI al concluir que el embargo ex-parte que realizaron los apelados fue legal.

4) Erró el TPI al emitir sentencia confirmatoria del laudo de arbitraje a pesar de que los apelados no cuestionaron el “Memorandum en apoyo a la solicitud de revocación del laudo de arbitraje y en torno a la ilegalidad del embargo ” presentado por los apelantes.

5) Erró el TPI al concluir que la acción de anulabilidad de contrato por dolo de los comparecientes estaba prescrita.

6) Erró el TPI al imponer honorarios de abogado y al imponer interés por temeridad cuando los apelantes no fueron temerarios ni frívolos en sus alegaciones. ”

II
En nuestra jurisdicción existe una fuerte política pública a favor del arbitraje. Paine Webber Inc. of P.R. v. Serv. Concepts, Inc., 151 D.P.R. 307, 312 (2000). Toda duda respecto a la existencia o no de dicho procedimiento debe resolverse a su favor. U. Ciencias Méd. S.J. Bautista v. E.L.A., 141 D.P.R. 403, 415-416 (1996). Una estipulación mediante la cual las partes acuerdan someter una controversia judicial a arbitraje, equivale a un acuerdo de transacción que les obliga.
Ante convenios de este tipo lo recomendable es que los tribunales se abstengan de intervenir en la controversia, hasta tanto se agote el mecanismo de arbitraje. C.F.S.E. v. Unión, 170 D.P.R. _ (2007), 2007 J.T.S. 40, a la pág. 980; Bird Const. Corp. v. A.E.E., 152 D.P.R. a la pág. 938; U.C.P.R. v. Triangle Engineering Corp., 136 D.P.R. a la pág. 142; véase, 32 L.P.R.A. see. 3203.
El arbitraje contractual se rige por los siguientes principios: (a) que las partes sometidas a arbitraje tienen amplia libertad para incorporar en el convenio de sumisión las cualificaciones que consideren propias al caso y el árbitro viene obligado a darles cumplimiento; (b) el convenio de sumisión confiere la facultad decisional al árbitro y delimita su esfera de acción; (c) es nulo un laudo, si se excede de los poderes delegados en el convenio de sumisión correspondiente. Rivera v. Samaritano Co., Inc., 108 D.P.R. 604 (1979); Febus v. MARPE Const., 135 D.P.R. 206 (1994).
La Ley de Arbitraje de Puerto Rico, Ley Núm. 376 de 8 de marzo de 1951, según enmendada, 32 L.P.R.A. see. 3201 et. seq., constituye el andamiaje legal para disponer del caso de autos. En su Art. 1, dicha ley dispone que “[d]os o más partes podrán convenir por escrito en someter a arbitraje, de conformidad con las disposiciones de [esta ley], cualquier controversia que pudiera ser objeto de una acción existente entre ellos a la fecha del convenio de someter a arbitraje; o podrán incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de cualquier controversia que en el futuro surgiere entre ellos de dicho acuerdo o en relación con el mismo.” 32 L.P.R.A. see. 3201. Una vez sometidas las partes al convenio de arbitraje, éste se convertirá en válido, exigible e irrevocable, salvo por los fundamentos de derecho que conlleven su revocación. Id.
Una vez emitido el laudo disponiendo finalmente de la controversia, cualquiera de las partes sometidas a arbitraje podrá solicitar al tribunal de primera instancia que ordene la confirmación de un laudo. Dicha petición deberá ser radicada dentro del año siguiente al laudo, salvo que se haya pactado la prorrogación de este término. El tribunal accederá a la confirmación, a menos de que existan algunas de las circunstancias que conlleven su revocación, modificación o corrección, conforme a los artículos 22 y 23 de la Ley. 32 L.P.R.A. see. 3221.
*688 A tales efectos, en el Art. 22 de la Ley de Arbitraje, supra, se establecen las razones por las que puede revocarse un laudo de arbitraje, previa moción de parte y celebración de vista. Éstas son:

“(a) Cuando se obtuvo mediante corrupción, fraude u otro medio indebido.

(b) Cuando hubo parcialidad o corrupción evidente de los árbitros o cualquiera de ellos.

(c) Cuando los árbitros actuaren erróneamente al rehusar posponer la vista, luego de mostrarse causa justificada para ello, o al rehusar oír evidencia pertinente y material a la controversia, o cuando incurrieren en cualquier error que perjudique los derechos de cualquiera de las partes.

(d) Cuando los árbitros se extendieren en sus funciones o cuando el laudo emitido no resolviera en forma final y definitiva la controversia sometida.

(e) Si no hubo sumisión o convenio de arbitraje válido y el procedimiento se inició sin diligenciar la notificación de intención de arbitrar, según se dispone en la see. 3211 de este título, o la moción para obligar el arbitraje, según se dispone en el inciso (1) de la see. 3204 de este título.

Por su parte, el Art. 23 de la referida ley, supra, establece las situaciones en que el tribunal podrá modificar o corregir un laudo de arbitraje, también previa notificación y vista. Estas son:
“(a) Cuando hubo evidente error de cálculo en cuanto a las cifras, o evidente error en la descripción de ! cualquier persona, cosa o propiedad.

(b) Cuando los árbitros hayan resuelto sobre materia no sometida a ellos.

(c) Cuando el laudo sea imperfecto en materia deforma, sin afectar los méritos de la controversia. ”

A renglón seguido, el Art. 24 de la misma ley concede un término de tres meses para solicitar la revocación, modificación o corrección de un laudo al amparo de los artículos 22 y 23, anteriormente transcritos. 32 L.P.R.A. see. 3224. Conforme al Art. 2 de la ley, “[tjoda solicitud que se hiciere bajo las disposiciones de este capítulo se radicará en la sala del Tribunal de Primera Instancia de Puerto Rico dentro de cuya demarcación territorial residen las partes o cualquiera de ellas, y se verá sumariamente, previo al emplazamiento dispuesto por la ley’’.
En Autoridad sobre Hogares v. Tribunal Superior, 82 D.P.R. 344 (1961), el Tribunal Supremo resolvió que la intención del legislador al aprobar la Ley en cuestión no fue la de que los laudos estuvieran sujetos a revisión en su fondo, por cualquier error de los árbitros en la apreciación de los hechos o de las normas de derecho que un tribunal aplicaría a la controversia. La revocación, modificación o corrección de un laudo de arbitraje sólo podía decretarse cuando acontecieren los motivos o situación estatuida en la Ley. Esta doctrina fue ratificada en C.R.U.V. v. Hampton, 112 D.P.R. 59 (1982).
Tampoco son revisables los señalamientos de error que requieran al Tribunal considerar en sus méritos la prueba recibida por los árbitros. C.R.U.V. v. Hampton Dev., 112 D.P.R. a la pág. 64; S.I.U. de P.R. v. Otis Elevator Co., 105 D.P.R. a la pág. 838; Autoridad sobre Hogares v. Tribl. Superior, 82 D.P.R. a la pág. 363.
Por su parte, en Rivera v. Samaritano, Co., supra, se limita la facultad de los tribunales para revisar los méritos jurídicos de un laudo de arbitraje, a aquellos casos en los que las partes expresamente hayan acordado *689 que los asuntos sometidos a arbitraje tenían que ser resueltos con arreglo a derecho.
Aun en estos casos, sin embargo, los tribunales vienen obligados a conceder deferencia a las determinaciones del árbitro y sólo decretarán la nulidad del laudo cuando éste efectivamente haya adjudicado una controversia de forma contraria a la ley. U.C.P.R. v. Triangle Engineering Corp., 136 D.P.R. a la pág. 143, n.7; Rivera v. Samaritano & Co., Inc., 108 D.P.R. a la pág. 609.
Se requiere, sin embargo, que el laudo arbitral disponga final y definitivamente la controversia, lo que significa que éste deberá proveer un remedio claro y completo. De esta manera, el laudo podrá ponerse en vigor y será final y obligatorio para las partes. J.R.T. v. Otis Elevator Co., 105 D.P.R. 195, 200-202 (1976); véase, 32 L.P.R.A. see. 3222, inciso (d).
Sometida una controversia a arbitraje en el que las partes pactaron que la decisión o el laudo serían finales, firmes e inapelables, sin disponer si la decisión tiene que ser conforme a derecho, debe entenderse que el laudo no tenía que ser conforme a derecho. Así, en ausencia de pacto de que un laudo de arbitraje sea conforme a derecho, este sólo puede ser impugnado judicialmente, por las razones establecidas en el Art. 22 de la Ley de Arbitraje.
III
Respecto al primer y segundo señalamiento de error, los apelantes pretenden fundamentarse en el inciso (c) del Art. 22 de la Ley de Arbitraje, supra, en cuanto a rehusar oír evidencia pertinente y material a la controversia o cuando incurrieren en cualquier error que perjudique los derechos de cualquiera de las partes. Entendemos que este señalamiento es inmeritorio. En el caso de autos, las partes no convinieron que el laudo tenía que ser conforme a derecho, por lo que este Tribunal está impedido de revisar en sus méritos el laudo emitido.
Lo que los Leason argumentan en este señalamiento es que el Panel de Árbitros (PDA) hizo caso omiso de las alegadas admisiones de Alain Tiphaine y a la evidencia presentada por los apelantes para probar que la limpieza del terreno y la construcción de una verja, no constituye el “comienzo de la construcción” según dicho término en el “Definitive Purchase Agreement” (DPA).
La apreciación de la prueba por parte del PDA no está enmarcada dentro del parámetro de las violaciones al debido proceso de ley en su vertiente sustantiva ni procesal, salvo que se demuestre que existe corrupción, fraude u otro acto impropio por parte de los árbitros.
Los Leason no han podido identificar alguna instancia dentro del arbitraje en que el PDA se haya negado a admitir evidencia pertinente y material a las controversias ante su consideración. Tampoco existe algún ofrecimiento de prueba por parte de los Leason en torno a este particular. Véase, Regla 5 de Evidencia, 32 L.P. R.A. Ap. IV.
En consecuencia, la alegada violación al debido proceso de ley o la impugnación fundamentada en el Artículo 22 de la Ley de Arbitraje, supra, por dejar de admitir evidencia pertinente es inexistente.
El argumento de los apelantes no es sino una forma sutil de intentar que este Tribunal revise en sus méritos el laudo impugnado, a la luz de la evidencia desfilada en el procedimiento de arbitraje, lo que, según hemos explicado, resulta improcedente. U.C.P.R. v. Triangle Engineering Corp., 136 D.P.R. a la pág. 143, n. 7; Febus y otros v. MARPE Const. Corp., 135 D.P.R. a las págs. 217-218; C.R.U.V. v. Hampton Dev., 112 D.P.R. a la pág. 64; Autoridad sobre Hogares v. Tribl. Superior, 82 D.P.R. a la pág. 363.
En cuanto al tercer y cuarto error, lo cierto es que el laudo contiene una liquidación final de las *690 reclamaciones y contra-reclamaciones de las partes, la que arrojó un saldo positivo a favor de Bat. El laudo emitido contiene un detalle de las cuantías adeudadas por las diferentes reclamaciones por concepto de gastos; inscripción de escrituras; pérdida de ganancias y daños. La liquidación emitida constituye un remedio claro, completo y adecuado y equivale a la adjudicación final y definitiva de la controversia.
La Ley de Arbitraje provee un término de un año para procurar la confirmación y un término de tres meses para solicitar su revocación. Véase, artículos 21 y 24 de la Ley de Arbitraje, supra.
Una vez emitido el laudo, Bat hizo un requerimiento de pago y ante la inacción de los apelantes inició el procedimiento de confirmación, acompañando con su demanda la solicitud de embargo preventivo ex parte.
Aplicando el razonamiento del Tribunal Supremo en Ramos y otros v. Colón y otros, 153 D.P.R. 534 (2001), un laudo que pone término final a la totalidad de las reclamaciones presentadas y ante la cual se ha instado un recurso de confirmación es el equivalente de una “sentencia final” y no una mera resolución interlocutoria que está sujeta a reconsideración en cualquier momento antes de dictada la sentencia final. Por tanto, una acción de impugnación no es suficiente para paralizar el procedimiento de confirmación, salvo orden en contrario. Art. 24 de Ley de Arbitraje, supra. Por ende, el embargo continúa siendo válido, salvo que se revoque la sentencia apelada en su totalidad. Ortiz Hernández v. Chase Manhattan Bank, N.A., 109 D.P.R. 395 (1980).
En cuanto al quinto error, dicha causa de anulabilidad por dolo constituye una defensa afirmativa que tenía que ser levantada y probada durante el arbitraje para impedir que se invalidara la retroventa contenida en la Escritura Núm. 1. Neca Mortgage Corp. v. A&W Dev. S.E., 137 D.P.R. 860 (1995). Si los apelantes no levantaron ni probaron la defensa en dicha ocasión, estamos impedidos de entrar en tal discusión por lo que la renunciaron según establecido en la Regla 11.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 11.1; Febo v. Tribunal, 102 D.P.R. 405 (1974).
Por último, el sexto error atenta contra los honorarios de abogado y el interés por temeridad impuesto contra los apelantes. De la sentencia apelada se desprende que el Tribunal confirmó las respectivas acreencias de las partes, según dictaminadas por los árbitros.
La Regla 44.1 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 44.1, dispone en su parte pertinente:
“(d) Honorarios de abogado. — En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. ”
El concepto “temeridad” ha sido ampliamente definido por nuestra jurisprudencia. En términos generales, se considerará temeraria toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. Rodríguez v. T.O.L.I.C., 171 D.P.R. _ (2007), 2007 J.T.S. 104; Domínguez v. GA Life, 157 D.P.R. 690 (2002); Jarra Corp. v. Axxis Corp., 155 D.P.R. 764 (2001); Blas v. Hosp. Guadalupe, 146 D.P.R. 267, 334-335 (1998). El propósito fundamental es establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajos e inconveniencias de un pleito. Fernández v. San Juan Cement Co., Inc., 118 D.P.R. 713, 718 (1987).
Aunque de carácter discrecional, cuando una parte ha procedido de tal forma, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado. Determinada la existencia de temeridad, la condena de honorarios es imperativa. Blas v. Hosp. Guadalupe, supra, pág. 334; Montañez Cruz *691 v. Metropolitan Cons. Corp., 87 D.P.R. 38 (1962).
En cuanto a la determinación de temeridad, debemos recalcar que los apelantes han instado cuatro procedimientos anteriores ante el TPI, todos desestimados por razón de que procedía acudir al procedimiento de arbitraje. (Énfasis Nuestro). Estos se resumen de la siguiente forma:

“ 1) Caso Núm. AAC 2005-0027 presentado el 15 de febrero de 2005 - aduciendo tener derecho a utilizar cierta propiedad dedicada a uso ecuestre.

2) Caso Núm. APE 2005-0047 presentado el 10 de octubre de 2005 - alegando hechos similares al caso anterior.

3) Caso Núm. APE 2006-0039 presentado el 5 de Julio de 2006 — sobre orden provisional temporera de cese y desista, injunction preliminar y permanente.

4) Caso Núm. AAC2006-0136 — sobre cumplimiento especifico de contrato y daños y perjuicios. ”

Inconforme con la determinación del último caso, presentaron un recurso de apelación ante el TA, Caso Núm. KLAN-2007-00236, en donde mediante sentencia dictada el 20 de septiembre de 2007, se confirmó la sentencia desestimatoria.
En adición, la Demanda Enmendada que desestimó la sentencia de la cual se recurre constituye un quinto intento de los apelantes para lograr su objetivo, obligando a la otra parte a incurrir en gastos innecesarios y alargando las controversias ya presentadas ante el árbitro y el tribunal.
Ante las anteriores circunstancias, debemos atenemos a la norma de que una discrepancia de criterio con el laudo no justifica por sí misma la intervención judicial, pues se destruyen los propósitos fundamentales del arbitraje de resolver las controversias rápidamente sin los costos y demoras del proceso judicial. Rivera v. Samaritano Co. Inc., supra, pág. 609.
IV
Por los fundamentos antes expresados, confirmamos la Sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones