La Jueza Asociada Señora Pabón Charneco
emitió la opinión del Tribunal.
Comparecen ante nos el Gobierno de Puerto Rico et al. y solicita que revoquemos una Resolución interlocutoria emi-tida por el Tribunal de Apelaciones. Mediante esta, el foro apelativo intermedio concedió siete (7) días a la parte re-currida de epígrafe para que se expresara en cuanto a una Moción en Auxilio de Jurisdicción presentada por la parte peticionaria ante ese foro.
*374 El caso de autos nos da la oportunidad de expresarnos en cuanto a la naturaleza de las mociones en auxilio de jurisdicción en nuestro ordenamiento jurídico. En particular, debemos resolver si, ante una moción en auxilio de jurisdicción en la cual se solicita la paralización de los efec-tos de un injunction en un caso de alto interés público, el Tribunal de Apelaciones abusa de su discreción al conceder términos a las partes para expresarse sin antes evaluar si la moción en auxilio de jurisdicción que se presentó es me-ritoria de su faz.
Previo a atender esta controversia, pasamos a exponer los hechos que dieron génesis al caso de autos.
I
El 17 de mayo de 2011, los recurridos de epígrafe, quie-nes son maestros y padres de estudiantes de la Escuela Superior Luis Muñoz Iglesias del municipio de Cidra, reci-bieron una notificación del entonces Secretario de Educa-ción, Jesús Rivera Sánchez, en la cual se les informó que, de acuerdo con el procedimiento establecido en la Carta Circular Número 4-2009-2010, se cerraría su escuela, efec-tivo el 31 de mayo de 2011. A su vez, en la misiva se noti-ficó que las operaciones de ese plantel escolar se consolida-rían con la Escuela Superior Ana J. Candelas del mismo municipio.
Inconformes con ese proceder administrativo, el grupo de padres y maestros (en adelante los recurridos) presen-taron el 1 de junio de 2011 un pleito de interdicto prelimi-nar ante el Tribunal de Primera Instancia, Sala Superior de Caguas. En este, alegaron que la determinación de ce-rrar y consolidar con otra su escuela era una determina-ción arbitraria y caprichosa que violentaba sus derechos constitucionales a un debido proceso de ley y a la igual protección de las leyes.
*375 En síntesis, los recurridos sostuvieron que no procedía el cierre del plantel escolar ya que el Departamento de Educación no siguió el procedimiento establecido en la Carta Circular Número 4-2009-2010, el cual requería que, previo a ordenar el cierre de una escuela, el Director Regional debía notificar al Consejo Escolar sobre la evalua-ción de cierre escolar que se efectuaría, de modo que ese organismo se pudiera expresar en cuanto a este y emitiera una recomendación al respecto.
Así las cosas, el Tribunal de Primera Instancia pautó una vista inicial para el 9 de junio de 2011. Ese mismo día, el Gobierno de Puerto Rico presentó una Moción de Deses-timación en la cual argumentó que conceder un injunction en el caso de autos violentaría el principio de separación de poderes, ya que se daría paso a una intromisión indebida con la discreción inherente del Poder Ejecutivo. A su vez, el Gobierno alegó que el pleito incoado por los recurridos no cumplía con los requisitos esbozados en la Regla 57 de Pro-cedimiento Civil, 32 L.P.R.A. Ap. V, ni con lo enunciado en el Art. 658 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 3524.
En cuanto a las alegadas violaciones al procedimiento dispuesto en la Carta Circular Número 4-2009-2010, el Go-bierno de Puerto Rico argumentó que se trataba de direc-trices generales y que la propia Carta establecía que en nada se alteraba la facultad del Secretario de Educación para cerrar escuelas aunque no hubiese recibido recomen-daciones al respecto. Por su parte, los recurridos presenta-ron una oposición a la Moción de Desestimación presen-tada por el Gobierno y, el 20 de junio de 2011, el foro de instancia la denegó. Así las cosas, citó a las partes para la vista de injunction preliminar a celebrarse tres (3) días después.
En esa vista, los recurridos presentaron el testimonio de un maestro de matemáticas de la Escuela Superior Luis Muñoz Iglesias, así como la misiva de 17 de mayo de 2011 *376 y la Carta Circular Número 4-2009-2010. Acto seguido, el Gobierno presentó una Solicitud al Amparo de la Regla 39.2(c) de Procedimiento Civil, 32 L.P.R.A. Ap. V, y argu-mentó que los recurridos no presentaron alegaciones sufi-cientes que justificaran la concesión de un remedio. Sos-tuvo, además, que los recurridos no sufrirían un daño que justificara la emisión de un injunction a su favor ya que todos los estudiantes y maestros serían reubicados en la Escuela Superior Ana J. Candelas ubicada en el mismo municipio. El foro de instancia denegó ese petitorio.
Posteriormente, el 28 de junio, y notificada el 1 de julio de 2011, el Tribunal de Primera Instancia emitió una Re-solución en la cual expidió un injunction provisional y or-denó al Departamento de Educación que dejara sin efecto el cierre de la Escuela Superior Luis Muñoz Iglesias. En-tendió el foro de instancia que, al no cumplir con las direc-trices de la Carta Circular Núm. 4-2009-2010, el Departa-mento de Educación violentó los derechos constitucionales de los recurridos. A su vez, determinó que cerrar el plantel escolar les causaría a estos un daño irreparable.
Inconforme, el Gobierno de Puerto Rico presentó el 15 de julio de 2011 un recurso de certiorari ante el Tribunal de Apelaciones. Junto con este, presentó una Moción en Auxi-lio de Jurisdicción en la cual peticionó que, dado el alto interés público del caso y el hecho de que el nuevo semestre escolar estaba a solo días de comenzar, se dejara sin efecto inmediatamente el injunction provisional emitido por el Tribunal de Primera Instancia mientras se dilucidaba el recurso de certiorari. Ese mismo día, en la tarde, el foro apelativo intermedio emitió una Resolución en la cual, sin atender los asuntos esbozados en la moción en auxilio de jurisdicción que tenía ante sí, le concedió siete (7) días a la parte recurrida para que expresara su posición en cuanto a la petición del Gobierno y el recurso de certiorari presentado.
Insatisfecho con ese proceder, el 21 de julio de 2011, el *377 Gobierno de Puerto Rico presentó una Petición de certio-rari acompañada de una Moción en Auxilio de Jurisdicción ante este Tribunal y señaló que se cometió el siguiente error:
Erró el Tribunal de Apelaciones al no paralizar la efectividad del “injunction” emitido por el Tribunal de Instancia, mientras dilucida la petición de “certiorari” que fue presentada ante sí. Petición de certiorari, pág. 10.
Luego de analizar la moción, el 22 de julio de 2011 pro-cedimos a declararla “ha lugar”, paralizando así los efectos del injunction emitido por el Tribunal de Primera Instancia. A su vez, emitimos —a los recurridos— una Or-den de Mostrar Causa por la cual no debíamos revocar la Resolución emitida por el Tribunal de Apelaciones.
Los recurridos comparecieron el 1 de agosto de 2011, por lo cual estamos en posición de resolver sin ulterior trámite.
II
A. Una moción para solicitar a un tribunal un remedio en auxilio de su jurisdicción es, en esencia, un llamado a la utilización del poder inherente que tiene todo tribunal para constituir los remedios necesarios que hagan efectiva su jurisdicción y que eviten fracasos en la administración de la justicia. Pantoja Oquendo v. Mun. de San Juan, 182 D.P.R. 101 (2011); San Gerónimo Caribe Project v. A.R.Pe., 174 D.P.R. 640, 654 (2008); Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656, 678 (1997). Es decir, se trata de un remedio en equidad que recae en la sana discreción de los tribunales y que “goza de características afines a otros de similar naturaleza, como lo son el entredicho provisional y el injunction preliminar”. Misión Ind. PR. v. J.P. y A.A.A., supra.
En nuestro ordenamiento se ha reconocido la facultad de los tribunales apelativos para emitir este tipo de órde- *378 nes en equidad. Así, por ejemplo, la Regla 79(A) del Regla-mento del Tribunal de Apelaciones establece, inter alia:
(A) Para hacer efectiva su jurisdicción en cualquier asunto pendiente ante sí, el Tribunal de Apelaciones podrá expedir cualquier orden provisional, la cual será obligatoria para las partes en la acción, sus oficiales, agentes, empleados(as) y abogados(as), y para aquellas personas que actúen de acuerdo o participen activamente con ellas y que reciban aviso de la orden mediante cualquier forma de notificación. 4 L.P.R.A. Ap. XXII-B.
La facultad inherente de este Foro para emitir órdenes en auxilio de jurisdicción también se encuentra recogida en nuestro Reglamento. Particularmente, la Regla 28 establece, en lo pertinente:
(a) El Tribunal podrá expedir una orden provisional en auxi-lio de su jurisdicción cuando sea necesario hacer efectiva su jurisdicción en un asunto pendiente ante su consideración.
A los fines de esta regla, se entenderá que el Tribunal aten-derá, sin sujeción al trámite ordinario, cualquier asunto rela-cionado con el recurso presentado o pendiente para evitar al-guna consecuencia adversa que afecte su jurisdicción o que pueda causar un daño sustancial a una parte mientras re-suelve el recurso. In re Reglamento Tribunal Supremo, 183 D.P.R. 386, 463 (2011).([1])
Debido a su linaje fundamentado en principios de equi-dad y de discreción inherente del poder judicial, hemos dicho que el remedio que ofrece esta Regla es “excepcional[,] de trascendental importancia en casos donde existan situaciones de verdadera emergencia”. (Enfasis suplido.) Marrero v. Dolz, 142 D.P.R. 72, 73 (1996) (Resolución). Así, al invocar la facultad discrecional de los tribunales apelativos, no se puede utilizar este remedio para casos o situa- *379 ciones que no conlleven el nivel de importancia adecuado. Estas disposiciones provistas por nuestro ordenamiento son de naturaleza similar al poder reconocido a los tribu-nales federales en Estados Unidos. Amanera de enriquecer nuestro análisis, conviene analizar brevemente la figura análoga de la moción en auxilio de jurisdicción en la esfera federal.
B. En esa jurisdicción de common law se encuentra estatuido el All Writs Act, 28 U.S.C. sec. 1651. Este esta-tuto federal establece que “el Tribunal Supremo y todas las cortes establecidas por Ley del Congreso podrán emitir to-dos los recursos necesarios o apropiados en auxilio de sus respectivas jurisdicciones y que sean acordes con los usos y principios del Derecho”. (Traducción suplida.) íd.
La doctrina federal establece que el All Writs Act, supra, se aprobó con el propósito de “asegurar que todos los recur-sos y remedios disponibles para las cortes del common law estén disponibles para las cortes federales a menos que su uso esté prohibido por estatutos o reglas”. (Traducción suplida.) 4 Moore’s Federal Rules Pamphlet Sec. 1651.2 (2012). Se ha reconocido que esta disposición permite a los tribunales federales emitir cualquier tipo de orden que sea en auxilio de su jurisdicción apelativa, incluso injunctions. 19 Moore’s Federal Practice Sec. 204.01[2][c] (1998). No obstante, la facultad de emitir órdenes en auxilio de su jurisdicción apelativa no significa que los tribunales apelativos federales puedan, a través de ese mecanismo, expan-dir su jurisdicción más allá de las fronteras constitucionales y estatutarias. Clinton v. Goldsmith, 526 U.S. 529 (1999); Pa. Bureau of Correction v. U.S. Marshals, 474 U.S. 34 (1985).
A su vez, y similar a nuestro ordenamiento, se ha reco-nocido en la esfera federal que expedir un injunction al amparo del All Writs Act es una medida que descansa en la sana discreción del tribunal apelativo y que se debe reser- *380 var solo para casos de verdadera urgencia en donde los derechos en controversia sean indiscutiblemente claros. Brown v. Gilmore, 533 U.S. 1301 (2001) (Rehnquist, J.R, actuando como juez de circuito); Ohio Citizens for Responsible Energy v. NRC, 479 U.S. 1312 (1986) (Scalia, J., actuando como juez de circuito)/[2])
De lo anterior podemos apreciar que en ambas jurisdic-ciones los mecanismos que proveen a los tribunales la fa-cultad de emitir órdenes en auxilio de su jurisdicción se amparan en principios de equidad. A la vez, van dirigidos a la discreción de cada tribunal y su uso se debe reservar para casos de verdadera urgencia.
C. Cónsono con estos principios, en ocasiones anteriores hemos expresado que el uso incorrecto del mecanismo de la moción en auxilio de jurisdicción “trastoca y entorpece injustificadamente el funcionamiento interno de este Tribunal, lo cual tiene un efecto detrimental en la administración expedita de la justicia”. Marrero v. Dolz, supra, pág. 73. A tales efectos, hemos establecido que los abogados que abusen de este mecanismo extraordinario estarán sujetos a sanciones. Id.; Regla 28 del Tribunal Supremo de Puerto Rico, supra.
Por otra parte, hemos reiterado la importancia de que el Tribunal de Apelaciones atienda con premura las mociones en auxilio de jurisdicción que se presenten ante él. Pantoja Oquendo v. Mun. de San Juan, supra. Por lo tanto, hemos colegido que en casos de alto interés público, el Tribunal de Apelaciones debe actuar con celeridad y abusa de su discreción si al conceder términos a las partes para que se expresen en cuanto a los fundamentos de una moción en auxilio de jurisdicción se fomenta un impermi- *381 sible panorama de incertidumbre. Pantoja Oquendo v. Mun. de San Juan, supra, págs. 114-115.
III
Analizada la naturaleza de la moción en auxilio de ju-risdicción en nuestro ordenamiento, pasemos a discutir los remedios que hemos reconocido se pueden conceder a las partes que hacen uso de este mecanismo extraordinario.
Comenta el tratadista Rafael Hernández Colón que, en atención a una moción en auxilio de jurisdicción, el Tribunal de Apelaciones
... puede expedir la orden que sea necesaria para mantener un estado de cosas entre los litigantes y el objeto del pleito que le permita llevar a cabo la revisión de la actuación del [Tribunal de Primera Instancia] ... y dictar una sentencia que sea eficaz para proteger los derechos de la parte que recurre ante el [Tribunal de Apelaciones]. R. Hernández Colón, Derecho pro-cesal civil, 5ta ed., San Juan, Ed. Lexis-Nexis, 2010, pág. 496.
Cónsono con lo anterior, desde Peña v. Federación de Esgrima de P.R., 108 D.RR. 147 (1978), habíamos reconocido que los tribunales apelativos están revestidos de autoridad para tomar medidas que, en auxilio de su jurisdicción, tengan el efecto de suspender los efectos de la Sentencia y detener su ejecución. Para poder prevalecer en su petitorio, establecimos que a la parte que interesa se suspendan los efectos de una Sentencia debe cumplir con los requisitos siguientes: (a) presentar un caso fuerte con probabilidades de prevalecer en los méritos; (b) sufrirá un daño irreparable si no se detiene la ejecución de la Sentencia; (c) la paralización no causará daño sustancial a las demás partes, y (d) no se verá perjudicado el interés público.([3]) Estos requisitos han sido reiterados consistente- *382 mente por nuestra jurisprudencia. Véanse: Pantoja Oquendo v. Mun. de San Juan, supra; Plaza Las Américas v. N & H, 166 D.P.R. 631, 642-643 (2005).
A su vez, estos requisitos también se aplican cuando una parte recurre al foro apelativo y solicita la paralización de los efectos de un injunction. Plaza Las Américas v. N & H, supra. Con relación a este asunto, la Regla 57.7 de Procedimiento Civil establece:
(a) Cuando una parte apele o recurra de una orden o sen-tencia que conceda, deje sin efecto o deniegue un injunction, el tribunal de instancia, en el ejercicio de su discreción, podrá suspender, modificar, restituir o conceder un injunction mien-tras se dilucida el recurso interpuesto bajo aquellos términos relativos a fianza y demás que estime adecuados para prote-ger los derechos de la parte contraria.
(b) Lo dispuesto en esta regla no restringe la facultad del tribunal de apelación o de uno(a) de sus jueces o juezas para paralizar los procedimientos mientras se dilucida el recurso interpuesto o para suspender, modificar, restituir o conceder un injunction mientras esté pendiente la apelación o certio-rari, o para dictar cualquier orden adecuada para preservar el status quo o la efectividad de la sentencia que habrá de emi-tirse en su día. No obstante, cuando una parte recurra de una orden que deje sin efecto o deniegue un entredicho provisional, el tribunal de apelación sólo podrá emitir, mientras dilucida el recurso interpuesto, una orden provisional ex parte que no debe excederse del término de diez (10) días que caracteriza a dicho recurso extraordinario, salvo que el tribunal expresa-mente prorrogue dicho término en conformidad con la Regla 57.1 de este apéndice. (Énfasis suplido). 32 L.P.R.A. Ap. V.
Por último, y cónsono con el principio de que ante una moción en auxilio de jurisdicción los tribunales pueden conceder cualquier remedio que en equidad proceda, he-mos, incluso, ordenado al Tribunal de Apelaciones que re-suelva controversias complejas y de alto interés público en *383 un término determinado. Véase v. Ciencias Méd. S.J. Bautista v. E.L.A., 141 D.P.R. 403, 405 (1996) (Sentencia).([4])
IV
A. Conforme a los principios anteriormente esbozados, procedemos a aplicarlos a la controversia de autos.
Como vimos, en el caso de epígrafe, el Gobierno de Puerto Rico presentó ante el Tribunal de Apelaciones un recurso de certiorari acompañado de una Moción en Auxilio de Jurisdicción. En esta peticionó que se dejara sin efecto el injunction emitido por el Tribunal de Primera Instancia, Sala Superior de Caguas. El foro apelativo intermedio emi-tió una Resolución en la cual le concedió siete (7) días a la parte recurrida de epígrafe para que se expresara en cuanto al recurso y la Moción en Auxilio de Jurisdicción.
El Tribunal de Apelaciones erró con tal proceder. Como hemos discutido, una moción en auxilio de jurisdicción correctamente utilizada coloca ante la consideración del foro apelativo una situación de gran importancia en la cual puede quedar afectada adversamente su jurisdicción o se pueden causar daños serios a una parte. En casos de alto interés público como el de autos, la urgencia de la situación es aún mayor. El Tribunal de Apelaciones debe actuar con toda celeridad para evitar que: (1) se afecte negativamente el interés público, y (2) se fomente un panorama de incertidumbre jurídica.
*384 Es por ello que en casos de alto interés público, como por ejemplo aquellos que versen sobre temas de separación de poderes, violaciones a derechos constitucionales, casos de menores o en los cuales se afecte la libertad de un ciudadano, el foro apelativo intermedio no puede conceder términos para que otras partes en el pleito se expresen en cuanto a un remedio solicitado en auxilio de su jurisdicción sin antes evaluar si la solicitud merece un remedio inmediato, o si, por el contrario, carece de mérito. Al así proceder, el Tribunal de Apelaciones estaría obviando la urgencia de ese recurso extraordinario. Aun cuando la con*cesión de ese remedio está sujeta a su sana discreción, ello no significa que tal discreción opera en un vacío, y el tribunal debe ponderar el interés de todas las partes involucradas en el pleito, sin que ello conlleve conceder términos a estas para expresárse en cuanto a este. Por ende, establecemos que en los casos en que se presenten situaciones como las antes descritas, el Tribunal de Apelaciones no puede conceder términos a las partes para que se expresen en cuanto a una moción en auxilio de jurisdicción sin antes evaluar si la solicitud es meritoria de su faz.
Lo anterior no significa que el Tribunal de Apelaciones deba conceder inmediatamente, cual objeto autómata, cualquier remedio solicitado mediante moción en auxilio de jurisdicción. A contrario sensu, el foro apelativo intermedio debe utilizar su discreción responsablemente para analizar si el remedio procede en derecho. Como todo acto discrecio-nal, el Tribunal de Apelaciones puede ponderar la situa-ción ya que pueden existir diferentes grados de urgencia. Incluso, si el tribunal considera meritorio o conveniente escuchar a la otra parte antes de adjudicar la moción, puede conceder un término corto —lo más limitado posi-ble— antes de resolver. Incluso, puede emitir un remedio provisional en auxilio de su jurisdicción, sujeto a la dispo-sición definitiva de la Moción una vez la otra parte comparezca. Pero lo que no puede hacer es conceder térmi- *385 nos a las partes para que se expresen en cuanto al remedio solicitado en auxilio de jurisdicción si con ello se fomenta un impermisible panorama de incertidumbre o se incurre en el riesgo de tornar académico el pleito. Tampoco se pue-den conceder términos sin evaluar antes los méritos de la moción en auxilio de jurisdicción, según la jurisprudencia aplicable, ya que ello le resta importancia a la situación presentada y tiene el efecto práctico de denegar sub silen-tio una moción en la cual se solicita la intervención urgente del Tribunal.
La disidencia sostiene que esta norma crea una injusti-ficada distinción en el manejo de mociones en auxilio de jurisdicción entre el Tribunal de Apelaciones y este Foro, pues “el Tribunal Supremo de Puerto Rico incurre cotidia-namente en la misma práctica por la que hoy reprende al foro intermedio”. Opinión disidente, pág. 401. Ello es incorrecto.
Primero, en las ocasiones en que proveemos términos a las partes para que se expresen en cuanto a mociones en auxilio de jurisdicción lo hacemos luego de ponderar los factores enumerados en Peña v. Federación de Esgrima de P.R., supra, y la citada Regla 28 del Reglamento de este Tribunal. Segundo, la disidencia parece no reconocer que la norma anunciada en esta Opinión aplica solo a casos en donde la concesión de un término a una parte fomenta un impermisible panorama de incertidumbre jurídica, y no a “cualquier moción en auxilio de jurisdicción” presentada. Ante ello, no es posible hablar de distinciones injustifica-das ya que este Tribunal solo concede términos en casos donde no se cree un panorama de incertidumbre ni exista un riesgo de convertir el pleito en académico.
B. De acuerdo con lo anterior, pasemos a aplicar los factores enumerados en Peña v. Federación de Esgrima de P.R., supra, y Pantoja Oquendo v. Mun. de San Juan, supra, para determinar si la Moción en Auxilio de Jurisdicción que presentó el Estado en el caso de autos era mérito- *386 ria de su faz y si la concesión de término provista por el Tribunal de Apelaciones fomentó un impermisible panorama de incertidumbre.
En el caso de autos, se solicitó una Orden de Paraliza-ción de un injunction emitido por el Tribunal de Primera Instancia. Mediante este procedimiento, se le prohibió al Secretario de Educación cerrar la Escuela Superior Luis Muñoz Iglesias. De un análisis de los autos podemos cole-gir que la parte peticionaria cumplió con todos los requisi-tos necesarios para expedir una Orden de Paralización de los efectos del injunction.
De entrada, mediante la Moción en Auxilio de Jurisdic-ción presentada ante el Tribunal de Apelaciones, el Depar-tamento de Educación expresó claramente el alto interés público que involucra el caso de autos. Se trata de contro-versias de separación de poderes, y del uso que hace el Poder Ejecutivo de sus facultades para administrar el erario. Debemos recordar que, en cuanto al derecho a la educación se refiere, la Constitución de Puerto Rico en su Artículo II, Sección 5, establece que la enseñanza en las escuelas públicas será gratuita y “hasta donde las facilida-des del Estado lo permitan, se hará obligatoria para la es-cuela primaria”. (Enfasis suplido). Art. II, Sec. 5, Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, pág. 292. Por ende, este caso involucra directamente una de las responsabilidades constitucionales ineludibles del Poder Ejecutivo: la obliga-ción de delinear las alternativas más razonables para el mejor y más eficiente uso de los fondos públicos, los cuales no son ilimitados.
Por otro lado, el Gobierno de Puerto Rico demostró que sufriría un daño serio si no se concedía el remedio de pa-ralización que solicitó en auxilio de jurisdicción del foro apelativo intermedio. La consolidación de la Escuela Superior Luis Muñoz Iglesias formaba parte de un plan inte-grado del Departamento de Educación. Al momento de pre- *387 sentar su Moción en Auxilio de Jurisdicción, faltaban aproximadamente dos semanas para comenzar el semestre escolar de agosto de 2011, por lo cual si no se paralizaba el injunction emitido por el Tribunal de Primera Instancia, el Estado sufriría un daño palpable. Ello es así ya que se trastocaría su plan para maximizar el uso de planteles es-colares para lograr una planificación coherente del sistema de educación pública. A su vez, de no paralizarse los efectos del injunction, se fomentaría un panorama de incertidum-bre en el cual el Estado no podría cumplir con sus planes de consolidación de escuelas para el manejo de fondos públicos.
Por otra parte, no existía riesgo de que la paralización del injunction en el caso de autos causara un daño sustan-cial a la parte recurrida de epígrafe. Los estudiantes de la Escuela Superior Luis Muñoz Iglesias no verían afectado su derecho a la educación, ya que todas las operaciones de su plantel escolar se consolidarían con las de otra escuela. La posible molestia que podría causarle a los recurridos el tener que viajar a otra escuela no es un daño grave. Ergo, la paralización del injunction en el caso de autos no ocasio-naría daño sustancial a los estudiantes.
Por último, el Gobierno de Puerto Rico presentó un caso fuerte con altas probabilidades de prevalecer en los méritos. Los recurridos argumentan que el Departamento de Educación los privó de su derecho constitucional a un debido proceso de ley, ya que no siguió los procedimientos para el cierre de escuelas establecidos en la Carta Circular Núm. 4-2009-2010, los cuales incluían notificar a los con-sejos escolares para que estos emitieran comentarios y re-comendaciones al Secretario de Educación. No obstante, en ese documento se establecen unas directrices generales, y se deja claro que estas “no limitan la autoridad del Secre-tario de Educación para aceptar o no, las recomendaciones del Comité \para el Cierre], ni su autoridad para tomar *388 acción, aunque no haya recibido recomendación”. (Énfasis suplido). Véase Apéndice de la Petición de certiorari, pág. 49. ([5])
Todos estos factores demuestran que el Gobierno de Puerto Rico cumplió con los requisitos esbozados en nues-tra jurisprudencia para que se ordenara la paralización del injunction provisional emitido por el Tribunal de Primera Instancia. Pero de mayor importancia es que el Gobierno de Puerto Rico argumentó correctamente el alto interés pú-blico presentado en el caso y el panorama de incertidumbre que se fomentaría si no se paralizaban los efectos de la sentencia del foro de instancia. Ante esas circunstancias, la Moción en Auxilio de Jurisdicción presentada por el Go-bierno de Puerto Rico era meritoria de su faz, por lo cual erró el Tribunal de Apelaciones al no conceder el remedio de paralización solicitado mediante esta. La concesión de un término de siete (7) días a la parte recurrida de epígrafe para que se expresara en cuanto a la moción aludida tuvo el efecto de fomentar un impermisible panorama de incertidumbre. Ante tal cuadro fáctico, se debieron parali-zar los efectos del dictamen del Tribunal de Primera Ins-tancia sin conceder el término aludido.
*389 V

Por los fundamentos antes expuestos, se expide el auto de certiorari y se declara “ha lugar”. Por ende, se mantienen paralizados los efectos del interdicto preliminar que emitió el Tribunal de Primera Instancia, Sala Superior de Caguas. Por lo tanto, se devuelve el caso al Tribunal de Apelaciones para que atienda con la celeridad debida los méritos del recurso de “certiorari”presentado ante ese foro.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Estrella Martínez emitió una Opinión de conformidad. La Jueza Asociada Señora Fiol Matta concurrió con el resultado y hace constar la expre-sión siguiente:
La Jueza Asociada señora Fiol Matta concurre con el resul-tado por entender que el Tribunal de Apelaciones se excedió en el ejercicio de su discreción al otorgar un plazo de siete días para que la parte recurrida se expresara en cuanto a la solici-tud de auxilio de jurisdicción presentada por el Estado. Dado los hechos particulares de este caso, el foro apelativo debió atender la petición de auxilio de jurisdicción con mayor premura. Sin embargo no por ello podemos concluir que el foro apelativo no dio consideración oportuna a la moción de su faz, según indica la Opinión mayoritaria. Además, el que el Tribunal de Apelaciones ejerciera su discreción de forma irrazona-ble en este caso no equivale, contrario a lo que aparenta con-cluir la Opinión mayoritaria, a que dicho tribunal carezca de discreción para otorgar plazos razonables para que las partes se expresen cuando se le presenten solicitudes en auxilio de jurisdicción. Al igual que en el caso de autos, el estándar apli-cable debe ser el de abuso de discreción según los hechos par-ticulares de cada caso. En ese sentido, no puedo estar con-forme con el análisis realizado por la Opinión mayoritaria que limita innecesariamente la discreción judicial.
La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión disidente, a la cual se unió el Juez Presidente Señor Hernández Denton. El Juez Asociado Señor Feliberti Cintrón no interviene.
*390 — o —

(1) Tan temprano como en 1946 ya se reconocía en el Reglamento de este Tribunal la facultad de expedir “injunctions en auxilio de su jurisdicción apelativa ...”. Regla 15a del Reglamento del Tribunal Supremo de Puerto Rico de 1946.

(2) A diferencia de este Tribunal, el Reglamento del Tribunal Supremo de Esta-dos Unidos permite que las mociones en las que se solicita la paralización de los efectos de una Sentencia se presenten a uno de sus jueces individualmente. Este puede disponer del asunto sin referirlo al Pleno del Tribunal. Véase Regla 23 del Tribunal Supremo de Estados Unidos, 28 U.S.C.

(3) Como hemos dicho en otras ocasiones, “[e]xiste cierta simetría entre los prin-cipios que regulan la concesión del injunction y los que regulan sus efectos post apelativos”. Plaza Las Américas v. N & H, 166 D.P.R. 631, 644 (2005). Así, la norma *382 reconocida en Peña v. Federación de Esgrima de P.R., 108 D.P.R. 147 (1978), refleja los requisitos para expedir un injunction, tanto preliminar como permanente. Véanse: Plaza Las Américas v.N&H, 166 D.P.R. 631 (2005); Mun. de Loíza v. Sucns. Suárez et al., 154 D.P.R. 333 (2001); Pérez Vda. Muñiz v. Criado, 151 D.P.R. 355, 372 esc. 11 (2000).

(4) En U. Ciencias Méd. S.J. Bautista v. E.L.A., 141 D.P.R. 403 (1996), se dio una situación similar a la de autos, en la cual el foro apelativo intermedio, ante una moción en auxilio de jurisdicción, se negó a paralizar los efectos de un injunction emitido por el Tribunal de Primera Instancia en un caso de interés público. En esa ocasión dijimos que el “foro apelativo debió acoger la moción en auxilio de su juris-dicción y decretar la paralización de la referida prohibición hasta tanto resolviera el recurso presentado. El balance de intereses y el derecho vigente así lo aconsejan”. (Énfasis suplido). Id., pág. 404. Por ende, y ante el alto interés público presentado, ordenamos al Tribunal de Apelaciones que resolviera la controversia planteada en un término de nueve (9) días.

(5) Por otro lado, el Art. 678 del Código de Enjuiciamiento Civil establece, en lo pertinente, que no se podrá emitir un injunction o una orden de entredicho en la siguiente circunstancia:
“(3) Para impedir la aplicación u observancia de cualquier ley de la Asamblea Legislativa de Puerto Rico, o el cumplimiento de cualquier actuación autorizada por ley de la Asamblea Legislativa de Puerto Rico, de un funcionario público, de una corporación pública, o de una agencia pública, o de cualquier empleado o funcionario de dicha corporación o agencia, a menos que se hubiera determinado por sentencia final, firme, inapelable e irreversible que dicha ley o actuación autorizada por ley es inconstitucional o inválida’’. (Enfasis suplido). 32 L.P.R.A. see. 3524(3).
Ante este mandato estatutario, el Gobierno solidificó su caso con altas probabi-lidades de prevalecer, ya que no surge de los autos que el Tribunal de Primera Instancia haya declarado inconstitucional la Carta Circular Núm. 4-2009-2010 o la Ley Orgánica del Departamento de Educación de Puerto Rico, Ley 149-1999 (3 L.P.R.A. sec. 143a et seq.), previo a la emisión del injunction.